The next case for argument is 15-5132 Guardian Moving and Storage Co v. United States. Help me out with your name. Joshua Rogoshevsky. Good morning. Please proceed. Thank you, Your Honor. May it please the Court. The central issue in this bid protest appeal is whether the floodplain certifications found at JA444-447 met the material requirements set forth in U.S. Transcom's solicitation at JA400. Because they did, in accordance with the terms of the solicitation at 403, the agency should have awarded the contract to my client, Guardian, because at the initial bid stage, only Guardian provided a technically acceptable bid. Let me ask you, if we disagree with that, does that end the case? Or is there a basis upon which you still think you can prevail? I'm not sure how to answer that question, Chief Judge Prost. I think there are three things that I have to show in order to win this appeal. I have to show first that, in fact, Guardian's proposal was technically acceptable in the initial bid stage. So if you don't cross that barrier, do you get to two and three? I don't think so, Judge Wallach. And that's because in order to invalidate the corrective action that was instituted by the agency here, we have to show that, in fact, one of the bids was technically acceptable and the other was not. Under the terms of the solicitation, it's the truthful answer based on the solicitation in this case and the bids and the way the process played out. As the solicitation sets out, what the agency was going to do was to evaluate the bids that I want to make sure I understand what you're arguing. If an agency does a solicitation and it's challenged and it finds that it made an error in it, even if it could go forward and award to another bidder, is it required to do so or is that within the agency's discretion to go back, get new bids, get new information or the like? No, I think it depends on what the language of the solicitation were to say. I will admit that the agency has a wide range of discretion in procurement cases. But do you think in this solicitation, if there was any qualified bidder, the agency was required to go forward no matter what the bid? That is how I read the language in the solicitation. And what language is that? It's at the end of the evaluation criteria and it says... You're going to need to give us an appendix. I apologize, Your Honor. It's JA402. It's the language at the end that, at the end of evaluating who has the lowest cost technically acceptable offer, it's the government's intention to award that... I'm sorry, I'm looking at JA402, but you're going to have to read the bottom paragraph. Yeah, the bottom, thank you, Judge Hughes. Without further consideration of any other... And that evaluation criteria means that if, in fact, the agency was erroneous in concluding that Guardian's proposal was not... I mean, this is a standard clause. This is not a clause that limits the agency's discretion. This is in almost every one of these kind of contracts and it says the agency doesn't have to do additional stuff, but it doesn't say the agency can't do additional stuff. Well, Your Honor, Judge Hughes, I think the case is that I would direct the court to the one side in our reply brief that talk about where the institution of corrective action, in this case, to reopen it, even though it had a bid that was technically acceptable and was within the competitive guidelines in terms of the independent government cost estimate, that when you have one bid that is technically acceptable and one that is clearly not, and not even close to, and I mean, there was basic documentation that was missing from Metropolitan's proposal, that the way the procurement system is supposed to work, Guardian should win that bid. It was providing value to the government. It was the incumbent contractor. So if Guardian's bid was initial bid on the floodplain issue, it was technically acceptable, you say? Well, that's certainly our argument now, and in fact, the agency... But then what you did is you fixed it. Two points, Your Honor. In fact, the agency, in reviewing the floodplain certification, found it technically acceptable several times. It was only once the government decided it wanted to issue corrective action, it decided to find that it was not accurate. And I would quibble with whether or not we, Guardian, in fact, corrected the floodplain certifications of the corrective action. Guardian made very clear its position that it did not need to correct them, but it did submit additional floodplain certifications by individual engineers. But Guardian's position then and now is that it did not need to do so. In fact, the original floodplain certifications met the material criteria set forth in the solicitation. Substantively, those floodplain certifications did tell the government that, in fact, none of the proposal occasions were in a 100-year floodplain, and that's an important criteria. In terms of the form, it was provided by an independent business, a professional company that does this, not just does it, but does it all the time and does it very well and is recognized in the industry for doing it well. What did the solicitation say regarding floodplains? Regarding floodplains, that is at JA-400, instructed to provide, it's subparagraph G. A floodplain report from FEMA, the Corps of Engineers, or a disinterested third-party professional engineer surveyor. And you're arguing under Clause 3, a disinterested third-party professional engineer slash surveyor, right? That's correct, Your Honor. But a professional engineer is an actual professional certification, isn't it? There is such a thing as a PE. Not all engineers are PEs. I think that I agree with you, Your Honor. And the initial certification was not from a PE. A company can't be a PE. It was from a company, and the company that does this on a regular basis. No, no, you're not answering my question. The company was not a professional engineer. I don't believe so. You don't have any evidence that it was. No, not in this record. But I would suggest that, and our argument is that that's not a material element to this consideration. Really? And in fact, we know it's not material because the government reviewed these forms by Corps of Logic on several occasions of this procurement, and not just saw it and passed over it. It reviewed it and found them acceptable. Well, maybe the government was wrong. I mean, if they would have awarded it to you, you probably would have gotten a bid protest from the other bidder saying their floodplain solicitation or certifications aren't good, and then the government would have been forced to do corrective action on those. I don't think so, Judge Hughes. In fact, the incumbent location, which was proposed to be used for this one, was accepted by the government on a similar floodplain certification by Corps of Logic's predecessor. So we know on this record that they at least made a mistake in the past. I disagree, Judge Walk. We know that, in fact, it's not material, whether or not it's performed by an individual professional engineer or by a professional company that does this on a regular basis. That is not the same thing at all in the engineering profession. Judge Walk, I mean, I disagree. I have to show you that it's not material, and in fact, the government's ability to control how it reviews its specifications is controlled by materiality. It's not just a footfall. It cannot disqualify something from being considered responsive. And in this case, we know the government accepted these floodplain certifications in the past. It accepted them in this procurement on several different occasions. It was only when the government needed to institute corrective action to give this contract to its preferred bidder, Metropolitan, that it manufactured this error. That's our position on appeal. It manufactured the error. Yes. So, in fact, the company had a PE? You're saying they falsified. Manufactured means falsified, yes? I'm saying the government found an error in the floodplain certifications. They had not been there before and, in fact, is not there now. In fact, the floodplain- So it's a discovered rather than manufactured. Words matter. I agree, Your Honor. I think they do matter. But I think it's important to stress that, in fact, that the government did not find this error until it needed to find an error in order to get to an area where it could then- Until they looked closely. Until they... No, I disagree, Your Honor. They looked at it very closely on several different occasions. Reviewers for the government reviewed this documentation and found it technically acceptable. And, in fact, it's because it is technically acceptable. I was going to say, this argument only matters if we agree with you that that solicitation requirement required the government to award rather than reopen and go back and re-review things. I agree, Judge Hughes. I mean, this is a very- And why... I mean, again, that's a very... You know that... I mean, I assume you know that's a standard clause. That's not the way that clause has ever been interpreted, to my knowledge. And why would we interpret it that way when we're talking about government procurements where it's the contracting officer looking at these proposals for various reasons and here clearly looking at your competitors and saying, this is a better price for us? Why wouldn't we allow them, in the interest of fiscal responsibility, to go back and reconsider it and allow them to correct any errors? I think it's an equally important consideration, Judge Hughes, that when the government issues a solicitation and it says that this is the path that it's going to follow- Well, I get that, but I think you're interpreting that very standard clause in a way that's never been interpreted that strictly before. I mean, if it said, if one bidder is technically unacceptable, we will, under all circumstances, award to the only technical responsible bidder, that's fine. If it really limits their discretion, all it says is that they can. Well, I think one of the things that the lower court in this case got right is the way that she framed this particular issue. She says, in the lower court's opinion, that if Guardian is correct, that if provided the only technically acceptable proposal at the initial bid stage, the contract should have been awarded to Guardian. I think Judge Sweeney was absolutely correct. I'm sorry, I'm done. I'm sorry. Yeah. Are you interested, I'm here from the government. May it please the court. The primary issue before the court is the reasonableness of the corrective action that was taken by the agency in February of 2015. Can you respond to the question that's been circling around here, which is assuming Guardian is right, whether the government would have been compelled to give them the award if only there was a problem with the other side? If we assume that Guardian is correct, that its original proposal was technically acceptable, the corrective action was still appropriate in the circumstances, still reasonable in the circumstances. That's because the corrective action has to be looked at in the factual circumstances of each case. What the agency pointed out here was that you had to have a level playing field for these two offerors, and that Guardian had been given discussions in the first round. Those discussions enabled Guardian to come up with an acceptable proposal, and Metropolitan was not given discussions. It was essential in doing this and moving forward with corrective action that we give both parties a level playing field and open it up for discussions to Metropolitan. This would give Metropolitan an equal opportunity to that that had been given to Guardian first off. Even if those earlier discussions with Guardian have anything to do with the issue we were talking about here, the adequacy of the documentation with respect to the fire marshal? It did not go to the floodplain issue. It went to other matters that made Guardian's initial submission an unacceptable technical proposal. The agency opened it up for discussions, allowed them to formulate and come up with a new proposal which was technically acceptable. Let me see if I understand the rule. You've got two bidders, and then it turns out for sake of argument that you award it to this guy, and then this guy you find out subsequently had a problem with his bid. If this guy doesn't, you evaluate whether or not you should go forward with him as to whether or not there were same level of discussions at the outset between the two, and if there weren't, then you get a do-over, and if there were, you don't? It's not a question of measuring the level of discussions or the extent of discussions. In this case, there were no discussions with Metropolitan. Well, you mentioned the standard being, I mean, your words were, I believe, a level playing field. So I guess, so the government has to make a determination as to whether at the outset there was a level playing field? Having decided to take corrective action, it's essential that both of the offerors be treated equally and that they have a level playing field. But let me ask you, at the outset, let's say they had picked Guardian, and that was an outgrowth of the fact that there were discussions with them and not with the other side. That's a little problematic, is it not? What about the level playing field in that circumstance? It really depends on the facts of the case. In this procurement, there were issues in the first round that warranted doing discussions with Guardian. And what they did with Metropolitan was just simply ask for a few clarifications. Then when it becomes apparent to the agency in February of 2015 that the first award is affected by error, the agency has to design a corrective action that is fair to both parties and essentially puts them on a level playing field to evaluate who should get the award. Let me ask you this, though, hypothetically. If instead of taking the corrective action you did, you said, you took the award back, you looked at it and said, Metropolitan's out because they're technically deficient. We're going to award to Guardian. If you did that and Metropolitan protested, you would probably be up here defending that award to Guardian, right? The problem then becomes that if the award had just been awarded, given to Guardian, they would have had the advantage of discussions and Metropolitan did not. Well, they would have the disadvantage of having violated the floodplain guarantee requirements, would they not? Well, both parties had to, in the corrective action, that was an error that was found. But Judge Hughes' hypothetical was you awarded it. Excuse me? Maybe I didn't understand the hypothetical. It doesn't really. I mean, I'm just saying, I mean, I get your position is basically when there's a bid protest and the government recognizes an error that they have broad discretion to take corrective action within the confines of the solicitation and you don't view that solicitation requirement that your friend points to as requiring an automatic award to whoever's remaining. Correct? Correct. But I was wondering what would happen is if under the same facts, we had a protest and you agreed with Guardian that Metropolitan was deficient. Could the corrective action have been to just award to Guardian? I think the answer is yes. You may have been subject to a bid protest from Metropolitan about the floodplain certification, but you were certainly within your rights to award to Guardian as corrective action. I would agree that there is a discretion, broad discretion, but here what we're pointing out is it has to be a reasonable exercise of discretion and on the factual circumstances of this case where there had been... Because during the initial round, you had discussions with Guardian to improve their bid or make it technically acceptable and you hadn't done that with Metropolitan. So once the technical problem was pointed out with Metropolitan, you felt it incumbent that you give them the same opportunity to have discussions and improve their bid. That's exactly what I do. The reason it's not computing for me is the discussions you had with Guardian obviously weren't in the nature of what was wrong with their bid, right? It were other defects, not related to the form. So is there a standard? So if you decided the other was deficient and you were going to give it to Guardian, would you say, well, wait a minute, we have to evaluate whether or not heretofore there's been a level playing field and if there hasn't, we can't, and if there has, we can? It's certainly... The overlying principle is that both all fours have to be treated equally. When you take corrective action. And in these circumstances, they looked at what had occurred. So the government is really running a risk in the first instance, if there's an imbalance, i.e. lack of a playing field to use your terms, when it's considering these contracts, because then if that's the standard we look to, we don't know how it's going to play out in the later days and it would always come out to bite them. Well, strictly speaking, the standard is whether the agency's corrective action is reasonable in the circumstances, the factual circumstances of each case. That is the appropriate standard. I refer to the principle of equality that both all fours have to be treated with equality and I'm relying on level playing field meaning the same thing, that you treat both all fours with equality in designing the corrective action that is appropriate. Supposing you don't need a corrective action? Excuse me? Supposing you decide you don't need a corrective action. You've talked to Guardian and the agency has in advance and they figured out the problems and corrected them and so they said submit a technically acceptable bid and Metropolitan doesn't. So you award it to Guardian and at that point, Metropolitan comes in and says, wait a minute, this wasn't a level playing field. You didn't talk to us and tell us what was wrong with our bid. Are you going to accept that argument? Is this directed to the first round or the second? Yes. In the first round, there are four provisions for when you conduct discussions and if there is something in the nature of the proposal that really needs to be addressed with discussions, then you would have discussions with a party. You don't necessarily have to have discussions with both parties because there has to be something materially that you need to address through discussion. So if you look at... So then how does it make it unfair in the second round? Excuse me? Then how does that make it unfair in the second round? Is the FAR requirement unfair? It becomes... When you're doing the second round, you want to make sure that you treat both offerors equally and because discussions... Or have treated in the past. You look at the procurement action overall and you're looking for fairness and equality and those are the principles that the agency used in designing the corrective action in this case. They're clearly overarching principles in procurement law and because it based its corrective action on those principles, it was reasonable in the circumstances. Basically what it did, as I said, it looked and saw that there had been discussions with Guardian that enabled Guardian to come up with an acceptable proposal in the first round and there had never been discussions with... Because you hadn't discovered the defect when you reviewed the specification for... Or the solicitation for moving metropolitan. Correct. The defect with regard to the flood plan form was only realized in the corrective action and I would point out that this was a defect for both parties. Both parties were given evaluation notices telling them that they had to meet this requirement of the solicitation. Wait a minute. I'm confused. I thought there were different problems, right? There wasn't Guardian's problem with the floodplain and the other metropolitan's problem with the fire stop? Metropolitan also had a problem with the floodplain. Both parties did and this is in the joint appendix in the evaluation notices at 944, 948, and 951. So that wasn't the basis for the bid protest the first time. I mean, the basis for the bid protest was metropolitan didn't comply with the fire stop, right? Correct, correct. You had not uncovered that defect during your review of the solicitation and subsequent award. Correct. It was only in the corrective action. And your argument essentially that if you had discovered that during the initial procurement proceedings, given the FARS requirement to have discussions to make technical corrections, you would have had discussions and they could have corrected it. So that's the reason you took the corrective action. The corrective action was taken for multiple reasons. Yes, also because the floodplain requirement was not met, but there were also, as the court pointed out, other inadequacies for metropolitan. So all of these inadequacies were dealt with during the corrective action. Can I go back to just the criteria that you used to reject their guardian's proposal, which is that they didn't have something signed by a disinterested third party professional engineer or surveyor. So they had a company called CoreLogic. What if we went to CoreLogic's website and we saw that all of their employees and everybody that does work for them is a professional engineer or surveyor and that the person that signed the letter, I mean, the company didn't sign it. Some individual must have signed something. And what if we ascertain that that person was a professional engineer or surveyor? So the company obviously can't be an individual person, but the person representing the company who signed for the company who did the evaluation was. Where is that in the record? Because I looked at the time. And I didn't see that there was a PE. The form, the submission, the CoreLogic submission, where is it in the record? One second. 444 maybe. Okay, at 444. These are the forms from CoreLogic submitted by Guardian Moving and Storage. Joint Appendix 444. But to go to the court's question, the trial court here made a specific finding that these forms were not from a disinterested third party. It looked at the form which was in the record and the requirement of the solicitation and said these forms are not from a disinterested third party. It's just CoreLogic and there's nothing that indicates that it's a disinterested third party professional engineer or surveyor. So that is a finding. Would somebody go to them and tell them, well, you know, we can't do it from CoreLogic. Did the person in CoreLogic that did this, is he a professional engineer? Did somebody go back and ask them to identify whether or not this person was a professional engineer or surveyor? The, what's being done is APA review of the agency procurement action and the court looks at the record before it. And this is the record that was- Wait, well, no, it's not entirely. Where's the later submission, corrective submission, that was made? Oh, the corrected submission. Yeah, where is it in the record? Okay, that was the initial one. Okay. I'm sorry, I don't have that. It's, it is a, it does come from a professional engineer and it has the map with it. I want it from the record. Okay, I'm going to, let me just a minute. Why don't you ask your opposing counsel if you don't know, it's his submission. 965, your honor. Thank you. Yeah, it's from a surveyor. LS. I'm not sure what, what the question is now from the court. Well, the question is the comparison of the two documents. Because the first one is from a corporate entity which cannot hold a PE license or an LS license. The second is from a licensed surveyor, an individual. So here the trial court looked at the record that it had in front of it and concluded that the first forms that were submitted were not from a third party professional engineer or surveyor. And having that record, it concluded that the agency was not arbitrary and capricious in finding that this requirement of the solicitation had not been met. So therefore, the first, the proposal that was in the record initially was not a technically acceptable final proposal from Guardian. And as I understand it, Guardian has conceded that that is a necessary element of its, it must show that that is an error in order to succeed on appeal. And it has not done so. The only other question really that's raised is the issue of mootness. And here I just wanted to point out that the court's ruling on mootness was a very narrow ruling. The only thing that was moot was the validity of the original contract award back in December of 2014. And the agency, at the time of the court's decision, we were not defending that. Had been overtaken by subsequent events and had become, had become moot because we were going forward with the corrective action and there were new submissions. Thank you. The court has no further questions. We would ask that it be affirmed. Several points I'd like to make on rebuttal quickly. First, on the mootness, which my friend just talked about. Embedded in our appellate argument is that if we, if in fact the court believes that the original bid was, based on the initial bids, the contract should have been awarded to Guardian and corrective action was improper, then it follows that in fact the appeal and the rest of the case is not, is not moot. Again, the moot, that's, I mean, again, I admit that we have to win all those points. Going back, my opposing counsel mentioned some of the discussions that took place in the first round, discussions with my client, and suggested that in fact there were no discussions or communications between Metropolitan and the agency. She didn't say there weren't any communications. She said there were clarifications, not discussions, and you know those have very technical meanings in bid protest law. I agree, Judge Hughes, but I think the important point is that, is to... Were there any discussions with Metropolitan? No, but Metropolitan was contacted about things in its proposal that were deficient. In this case, it was a cost element and then Metropolitan was given an opportunity to fix it. The second point is that the fault that we're talking about here with the fire code certifications is not something that it's plausible that the government would have missed in its review. It's not, it's not, it's not like the flood plate certifications where we're fighting about whether or not the right person signed it or not. There was no documentation at all on the fire code certification elements in Metropolitan's proposal. So it's implausible that the government did not notice this until it decided to... If it's implausible, then why wouldn't they have had discussions with Metropolitan to fix that? Clearly they would have because they have an obligation under the FAR to do that. I think, Judge Hughes, I think it's just an additional piece of evidence as to how this procurement was something was just not right about it from the start. That argues for your friend's case because if it's so clear that it was the government had an obligation to have noticed it and called it to their attention in the first instance and it failed to do it, that does suggest that fairness would require that they get the opportunity for a do-over. Helps them, not you. No, I disagree. If they would have awarded this contract to you instead of taking this corrective action, Metropolitan would have filed a BITRO trust and said, you got the opportunity to have discussions to make your proposal technically acceptable. We didn't get any discussions and that violates the FAR. I respectfully disagree, Judge Hughes, that in fact, the non-responsive nature of Metropolitan's proposal, the fact that there was no documentation on the fire code safety issues, may have actually eroded Metropolitan's standing to make that BITRO test. Well, they also would have objected to the failure to have an adequate floodplain certificate. You can say, oh, it's a technical difference. It isn't. That PE license survey requirement is part of the requirement. May I respond? Sure, of course. Thank you, Judge Walk. I just repeat what I said before, that materiality is an important element in this particular question. And the fact that the government, not just in this procurement, but in the past procurement, awarded a contract based on these types of floodplain certification. They accepted a flawed submission. I disagree, Your Honor. I think it shows that it's more important. States license professional engineers. They make them take a test for a reason. It's a different category. And I would suggest that, again, because the government accepted it in the past, it shows that that is not a material, that is not a material difference here. We ask the court to reverse. Thank you. Thank you. We thank both sides in the case of submitted.